# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**STEVEN L. SMITH,**

        **Petitioner,**

        **v.**

**TIM BUCANAN, WARDEN,**
**NOBLE CORRECTIONAL INST.,**

        **Respondent.**

        **CASE NO. 2:18-CV-00841**
        **CHIEF JUDGE EDMUND A. SARGUS, JR.**
        **Chief Magistrate Judge Elizabeth P. Deavers**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, has filed this Amended Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Amended Petition, Memorandum of Law, and "Writ of General Alias and Affidavit of Fact," the Return of Writ, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

### I. Facts and Procedural History

Petitioner challenges his convictions after a jury trial in the Licking County Court of Common Pleas for trafficking and possession of cocaine. The Ohio Fifth District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶ 2} On July 23, 2015, the Licking County Grand Jury indicted Smith for the offenses of Possession of Cocaine in violation of R.C. 2925.11(A)(C)(4)(f), a first degree felony (Count I) and Trafficking in Cocaine in violation of R.C. 2925.03(A)(2) & (C)(4)(g), a first degree felony (Count II). Attached to the second count was a forfeiture specification pursuant to R.C. 2941.1417. The specification requested forfeiture of the vehicle that Smith was driving when arrested and the fifty-eight thousand dollars that the officers seized from Smith's residence.

> {¶ 3} On September 3, 2015, Smith filed a motion to suppress the items seized during the search of his residence. On September 17, 2015, the prosecution filed its response opposing the motion. On October 2, 2015, the trial court conducted oral argument on the motion. The parties agreed that no testimony or evidence would

be presented to the trial court on the motion to suppress. On November 5, 2015, the trial court issued its entry overruling the motion.

{¶ 4} The following evidence was presented during Smith's jury trial.

{¶ 5} On July 7, 2015, a package was shipped via Federal Express from a Catherine Smith in California to a John Smith located at 50 North 11th Street Newark, Ohio. The package was sent two-day delivery with no signature required.

{¶ 6} On July 8, 2015 at approximately 11:45 p.m., Smith is observed on the video surveillance system of Big Mommas' House of Chicken and Fish located at 50 North 11th Street, Newark, Ohio. Smith can be seen entering the business and disconnecting the video surveillance system.

{¶ 7} On July 9, 2015, Detective Jerry Peters was working the package interdiction unit under the narcotics task force with the City of Columbus Police Department. Detective Peters has worked this unit for 17 of his 28 years with the Columbus Police Department. On July 9, 2015, Detective Peters was assigned to Federal Express in Columbus, Ohio.

{¶ 8} Detective Peters testified that he observed a white cardboard box come down the belt that stood out from the other packages. The box had been heavily taped at all of the seams.

The package was coming from California and was addressed from a "Smith" to a "Smith." Further, the telephone number was the same for the sender and the recipient of the package. Detective Peters initiated a LexisNexis Accurint database search and determined that Big Mommas' House of Chicken and Fish was located at the delivery address. Detective Peters called for a canine drug-detecting dog who subsequently alerted upon the package.

{¶ 9} Detective Peters obtained a search warrant to open the package and discovered over two pounds of cocaine inside the box. A decision was made to place a tracking device inside the package and to attempt a controlled delivery of the parcel. Detective Peters posed as the FedEx delivery person and delivered the package on July 9, 2015 to Big Mommas' House of Chicken and Fish. Detective Peters testified that 50 North 11th Street, Newark, Ohio is a commercial building divided into two sections. One side of the building was vacant; however, the other side of the building housed Big Mommas' House of Chicken and Fish. Detective Peters did not observe any "50 A" or "50 B" anywhere on the outside of the building.

{¶ 10} An employee accepted delivery of the package and placed it on a shelf.

{¶ 11} Special agent Jonathan Dozer of the Ohio Bureau of Criminal Investigation testified that he placed a "package alarm" inside the box. This device would enable

the officers to detect if the package is opened and to track the package from a short distance away.

{¶ 12} Officers maintained a visual surveillance of Big Mommas' House of Chicken and Fish. At approximately 5:50 p.m. on July 9, 2015, Smith is seen restarting the video surveillance system. At approximately 5:55 p.m., the officers detected that the package is being moved. Smith is observed on the video surveillance systems removing the package now located on the bottom rack of a cabinet or stand and leaving the building.

{¶ 13} Smith is driving a red Subaru. A second vehicle, a black Dodge Durango leaves the parking lot the same time as Smith. When the signal from the package is lost, a marked police cruiser attempted to stop the vehicles.

{¶ 14} After the officers initiated the emergency lights of their cruiser, they attempted to get around the "Durango which had slowed to almost a stop on 10th Street." Smith's home was "merely several feet away from the traffic stop." The box was recovered in plain view from Smith's vehicle.

{¶ 15} The Durango continued "and officers attempted to pull it over, but it fled making several turns." The Durango was eventually stopped. Two cell phones that were destroyed were found inside that vehicle.

{¶ 16} Smith gave Sergeant Alan Thomas of the Licking County Sheriff's Office an address of "252 West Main Street, Newark, Ohio" as his place of residence. (2T. at 365–366). While knocking on the front door of 314 N. 10th Street, a female who identified herself as Smith's mother informed the officers that Smith lived at the premises.

{¶ 17} Police obtained a warrant to search the premises located at 314 N. 10th Street.

{¶ 18} Lieutenant Paul Cortright is a law enforcement officer with over twenty-nine years of experience. Twenty-five of his twenty-nine years have been with the Central Ohio Drug Enforcement Task Force. Lieutenant Cortright testified he had received specialized training in dealing with items related to drug trafficking. Lieutenant Cortright testified that he had been involved in the search of the Smith's residence, specifically in the master bedroom. Lieutenant Cortright located a safe. Inside the bedroom closet, Lieutenant Cortright found a cardboard box containing a black vinyl bag. Inside of the bag, Lieutenant Cortright found a $50,000.00 in U.S. currency inside a vacuum-sealed bag. An additional $8,000.00 was found inside the safe. The vacuum sealing machine was also located in the master bedroom. Lieutenant Cortright testified that it is very common to seal up packets of narcotics for redistribution using this type of machine.

{¶ 19} Lieutenant Cortright further testified that several bags of white powder were located in the kitchen of Smith's home, and his belief was that it was used for

cutting cocaine. In addition, a large amount of Inositol a dietary supplement was located underneath the kitchen sink. Lieutenant Cortright testified that a bottle of Inositol costs $149 and is used as a cutting agent for cocaine. Lieutenant Cortright explained that the block of cocaine in the package would be made into a powdered form using something like a mortar and pestle. A mortar and a pestle were recovered from underneath the sink area in Smith's kitchen. The cocaine would then be mixed with a cutting agent, such as Inositol, and then pressed back into a solid form. A chrome press and a digital scale were also recovered from Smith's home. Additionally, the press found in Smith's home was found to have cocaine residue on it. The mortar and pestle found in Smith's home also had residue on it, but not a sufficient amount to test.

{¶ 20} No adult female clothing was observed in the home. (2T. at 294; 306; 310).The police also recovered a list with names with amounts of money next to each name.

{¶ 21} Francione Dumas testified on Smith's behalf. Dumas installed the video surveillance system at Big Mommas' House of Chicken and Fish. Dumas testified that Smith could activate or deactivate the system from his home using a tablet or computer. Dumas testified that on July 8, 2015, Smith brought the DVR recording system to him sometime around 11:30 p.m. to 12:00 a.m. Dumas was to see if the system could handle an additional video camera that Smith wanted to install. Dumas identified State's Exhibit 29 the DVR recording system confiscated by the police on July 9, 2015 from Big Mommas' House of Chicken and Fish as the same system he had received on July 8, 2015. (2T. at 459–460).

{¶ 22} Ana Jefferies, Smith's fiancé testified that she has lived with Smith at 314 North 10th Street since July 2015. Jefferies testified that the vitamins and supplements belonged to her, including the Inositol. Jefferies testified that she began taking Inositol at the request of her doctor. She further testified that she stored the items underneath the kitchen sink because the bottles were big and would fall off the shelves.

{¶ 23} Jeffries testifies that she has kept most of her belongings, including most of her clothing, in bags and totes. Further, Jefferies testified that the mortar and pestle, digital scale, and chrome press were used for food preparation.

{¶ 24} Smith testified on his own behalf. Smith testified that he was not expecting a package to be delivered on July 9, 2015; however, it was not unusual for packages to arrive at Big Mommas' House of Chicken and Fish.

{¶ 25} On July 9, 2015, Smith was preparing for a barbecue, blues and jazz festival at the business. Smith testified that he took the package when he left work to make room for the party preparations.

{¶ 26} Smith testified that he was on his way to Walmart to buy produce for the business and then his mother's home at the time he was stopped. Smith testified

that he kept the cash found in his home because he had bad experiences with banks in the past and he was attempting to save to buy the building that housed Big Mommas' House of Chicken and Fish. Smith testified that the money came from the business and from his previous business ventures.

{¶ 27} Smith testified that he has been a model citizen for the past 25 years and has been involved and active in the community. Smith testified his children are successful as well with two children in college and a third a manager.

{¶ 28} On February 11, 2016, the jury returned verdicts finding Smith guilty on both counts. Smith then elected to have the forfeiture specification tried to the court. The court found Smith guilty of the specification and ordered that the vehicle that he was driving and fifty of the fifty-eight thousand dollars seized from his residence be forfeited.

{¶ 29} On February 18, 2016, the trial court entered a nunc pro tunc final judgment entry. The court ordered that counts one and two be merged and imposed a mandatory sentence of eleven years on the second count. The court imposed a mandatory fine of ten thousand dollars, which it waived due to Smith's indigence. The court ordered Smith to pay the costs of prosecution, which the court did not waive. The court also ordered that Smith's driver's license be suspended for five years beginning February 11, 2016. Finally, the court notified Smith that he would be subject to a mandatory period of five year of post-release control on his release from prison.

Assignments of Error

{¶ 30} Smith raises three assignments of error,

{¶ 31} "I. COUNSEL'S ACTS AND OMISSIONS DEPRIVED APPELLANT OF EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 32} "II. THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION TO SUPPRESS.

{¶ 33} "III. THE JURY'S VERDICT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

*State v. Smith*, 5th Dist. No. 16-CA-15, 2016 WL 6138914, at *1-4 (Ohio Ct. App. Oct. 17, 2016). On October 17, 2016, the appellate court affirmed the judgment of the trial court. *Id*. On June 21, 2017, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Smith*, 149 Ohio St.3d 1433 (Ohio 2017). On February 16, 2017, Petitioner filed a Request for

Leave to file a Motion for a New Trial, based on *State v. Gonzales*, 150 Ohio St.3d 261 (Ohio 2016). (ECF No. 25, PAGEID # 399.) On August 2, 2017, the trial court denied the motion. (Entry, ECF No. 25, PAGEID # 462.) Petitioner did not file an appeal.

On January 31, 2019, Petitioner filed this Amended Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts that the trial court lacked jurisdiction (claim one); that he was denied the effective assistance of counsel (claim two); that the trial court improperly denied his motion to suppress (claim three); that the evidence is constitutionally insufficient to sustain his conviction (claim four); "Seventh Amendment violation" (claim five); "Article Six violation – Treaty violation" (claim six); and "Status" (claim seven). It is the position of the Respondent that these claims fail to raise cognizable grounds for federal habeas relief, and that they are procedurally defaulted or without merit.

## II. CLAIMS FIVE, SIX, and SEVEN

Even liberally construing Petitioner's pleadings, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (the allegations of a pro se complaint are to be held to less stringent standards than formal pleadings drafted by lawyers), the Court cannot determine the basis for habeas corpus claims five, six, and seven. Further, Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts provides that the Petitioner must specify the nature of his grounds for relief and state the facts in support of each ground. Rule 2(c)'s requirements are "more demanding" than Federal Rule of Civil Procedure 8(a), which requires in "ordinary civil proceedings" that the complaint "provide 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Mayle v. Felix*, 545 U.S. 644, 655-56, (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also McFarland v. Scott*, 512 U.S. 849, 860 (1994) (O'Connor, J., concurring in part) ("the habeas petition, unlike a complaint, must allege the factual underpinning of the

petitioner's claims").  Notice pleading is insufficient in a petition seeking habeas relief because a petitioner's pleadings must "state facts that point to a real possibility of Constitutional error." *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977); *see also McClure v. Warden, London Corr. Inst.*, No. 1:16–CV–729, 2018 WL 1452253, at *4 (S.D. Ohio March 1, 2018) *Report and Recommendation adopted*, No. 1:16–CV–729, 2018 WL 1425957 (S.D. Ohio Mar. 22, 2018) (internal citations omitted).  Dismissal under Habeas Rule 2(c) is appropriate in cases where it is impossible to determine from the petitioner's pleadings the exact errors of fact or law raised for adjudication.  *See Rice v. Warden,* No. 1:14-cv-732, 2015 WL 5299421, at *4 (S.D. Ohio Sept. 9, 2015) (dismissal under Rule 2(c) appropriate where pleadings contain unintelligible and conclusory allegations and statements) (citations omitted); *Accord v. Warden, Lebanon Corr. Inst.,* No. 2:12-cv-355, 2013 WL 228027, at *3 (S.D. Ohio Jan. 22, 2013) (while the court liberally construes a *pro se* prisoner's pleadings, it is not required to "conjure allegations" on the petitioner's behalf) (citations omitted).  These are the circumstances here.  The Court cannot determine the nature of Petitioner's claims.  With regard to these claims, he has failed to allege any facts that would support an argument that he was convicted in violation of the Constitution or laws of the United States.  Accordingly, the Magistrate Judge cannot determine what alleged errors of fact or law are at issue for adjudication. Thus, claims five, six, and seven are subject to dismissal on this basis alone.  Moreover, as discussed below, Petitioner has procedurally defaulted these claims by failing to present them to the state appellate court.

### III.  PROCEDURAL DEFAULT

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a).  In recognition of the equal obligation of the state courts to

protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam* ) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971) ). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's

failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted."

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Maupin*, 785 F.2d at 138. Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Id.*

Petitioner failed to present any of the allegations set forth in habeas corpus claims one, five, six, and seven to the state courts. He likewise failed to present his allegations of ineffective assistance of trial counsel set forth in habeas corpus claim two, with the exception of his claim that his attorney improperly opened the door to admission of evidence regarding his prior conviction for drug trafficking, to the state appellate court, where he was represented by new counsel.[1] Moreover, Petitioner may now no longer present any of the foregoing claims to the

---

[1] Petitioner asserts in habeas corpus claim two that he was denied the effective assistance of trial counsel because his attorney failed to introduce evidence pertaining to Petitioner's international jurisdiction and status as a foreign citizen, failed to challenge the jury pool and raise a claim

state courts because of Ohio's doctrine of *res judicata*. *See State v. Cole*, 2 Ohio St. 3d 112, 115 (1982); *State v. Perry*, 10 Ohio St. 2d 175, 180 (1967) (claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*.). The state courts were never given an opportunity to enforce this procedural rule due to the nature of Petitioner's procedural default.

Ohio's doctrine of *res judicata* is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman*, 501 U.S. at 732–33. To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411, 423 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* (quoting *James v. Kentucky*, 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964). The United States Court of Appeals for the Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.*, the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001), *cert. denied sub nom. Coleman v. Bagley*, 535 U.S. 1031 (2002); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000) *cert. denied*, 531 U.S. 1082 (2001); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir.), *cert. denied*, 525 U.S. 935 (1998). Ohio courts have consistently refused, in reliance on the doctrine of *res*

---

under *Batson v. Kentucky*, 476 U.S. 70 (1986), failed to remedy a conflict of interest, and failed to raise the defense of entrapment. (*Memorandum of Law*, ECF No. 21, PAGEID # 106.)

*judicata*, to review the merits of claims because they are procedurally barred. *See Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d 16, 18 (1981). Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law. Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

Petitioner may still secure review of his claims on the merits if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[,] '. . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule.'" *Coleman*, 501 U.S. at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). It is Petitioner's burden to show cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)). A petitioner's pro se status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). Instead, in order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007). Petitioner has failed to establish cause for his procedural defaults.

The United States Supreme Court has also held that a claim of actual innocence may be raised "to avoid a procedural bar to the consideration of the merits of [a petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). "[I]n an extraordinary

case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray*, 477 U.S. at 496. In *Schlup*, the Supreme Court held that a credible showing of actual innocence was sufficient to authorize a federal court in reaching the merits of an otherwise procedurally-barred habeas petition. *Id*. at 317. However, a claim of actual innocence is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id*. at 315 (quoting *Herrera*, 506 U.S. at 404). The actual innocence exception to procedural default allows a petitioner to pursue his constitutional claims if it is "more likely than not" that new evidence—i.e., evidence not previously presented at trial—would allow no reasonable juror to find him guilty beyond a reasonable doubt. *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005). Review of the record fails to establish that Petitioner can meet this standard here.

Thus, Petitioner has procedurally defaulted habeas corpus claims one, five, six, seven, and all of his allegations of the denial of the effective assistance of trial counsel set forth in habeas corpus claim two, with the exception of his claim that his attorney improperly opened the door to admission of evidence regarding his prior conviction on drug trafficking.

## IV. CLAIM THREE

In claim three, Petitioner asserts that his conviction violates the Fourth Amendment, because police lacked probable cause. This claim does not provide a basis for relief. Generally, habeas corpus relief cannot be based on an alleged violation of the Fourth Amendment, so long as the petitioner had an opportunity to present the claim to the state courts. *Stone v. Powell,* 428 U.S. 465, 482 (1976); *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982) (opportunity for full and

fair litigation of a Fourth Amendment claim exists where the state procedural mechanism presents an opportunity to raise the claim, and presentation of the claim was not frustrated by a failure of that mechanism.)

> One, the key purpose of federal habeas corpus is to free innocent prisoners. But whether an investigation violated the Fourth Amendment has no bearing on whether the defendant is guilty. [*Stone v. Powell*], at 490, 96 S.Ct. 3037. Two, exclusion is a prudential deterrent prescribed by the courts, not a personal right guaranteed by the Constitution. Any deterrence produced by an additional layer of habeas review is small, but the cost of undoing final convictions is great. *Id*. at 493, 96 S.Ct. 3037.

*Good v. Berghuis*, 729 F.3d 636, 637 (6th Cir. 2013). Ohio permits a criminal defendant to file a motion to suppress evidence prior to trial. See Ohio R. Crim. P. 12(C)(3). Further, there is no basis in the record upon which to find that Petitioner was unable to present a claim under the Fourth Amendment because of a failure of Ohio's procedural mechanism. To the contrary, the appellate court affirmed the trial court's denial of his motion to suppress evidence. State v. Smith, 2016 WL 6138914, at *9-15. Therefore, Petitioner's claim regarding the violation of the Fourth Amendment does not provide a basis for federal habeas relief. *See Davis v. Morgan*, No. 2:15-cv-00613, 2016 WL 6493420, at *9 (S.D. Ohio Nov. 2, 2016).

## V. MERITS

**Standard of Review**

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the standards of the Antiterrorism and Effective Death Penalty Act ("the AEDPA") govern this case. The United State Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559

U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

The AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state court decision either

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Further, under the AEDPA, the factual findings of the state court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)), *cert. denied sub nom. Coley v. Robinson*, 134 S. Ct. 513 (2013). The United States Court of Appeals for the Sixth Circuit has summarized these standards as follows:

A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L.Ed. 2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed. 2d 389.

*Id.* at 748–49. The burden of satisfying the AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## Claim Two – Ineffective Assistance of Trial Counsel

Petitioner asserts that he was denied the effective assistance of trial counsel, because his attorney opened the door to admission of evidence regarding Petitioner's prior criminal conviction. The state appellate court rejected this clam as follows:

{¶ 35} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180(1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

{¶ 36} In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251(2009).

{¶ 37} Recently, the United States Supreme Court discussed the prejudice prong of the *Strickland* test,

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, at 694, 104 S.Ct. 2052. It is not enough "to show that

the errors had some conceivable effect on the outcome of the proceeding." *Id.*, at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*, at 687, 104 S.Ct. 2052.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ——, ——, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland,* 466 U.S., at 689–690, 104 S.Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland,* 466 U.S., at 690, 104 S.Ct. 2052.

*Harrington v. Richter*, —— U.S. ——, 131 S.Ct. 770, 777–778, 178 L.Ed.2d 624 (2011).

{¶ 38} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley*, 42 Ohio St.3d at 143, 538 N.E.2d 373, quoting *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984).

\*\*\*

{¶ 45} Smith took the stand on his own behalf. At the beginning of his testimony Smith's trial counsel asked,

Q. Mr. Smith, have you ever engaged in drug trafficking?

A. No, sir.

Q. Well, in the 21st century, correct?

A. No, Sir.

(3T. at 500).

{¶ 46} Prior to cross examination, the court at the request of the prosecutor, conducted a side bar conference. (3T. at 523–24). The prosecutor argued that trial counsel in the above questioning had opened the door for the cross examination of a 1992 conviction for drug trafficking. (*Id*.). Trial counsel argued he had not opened the door. (*Id*.). His argument focused exclusively on the second question to Smith concerning drug trafficking and contained no reference to the first question. (*Id*.). The court at the end of the side bar ruled "All right. Yeah. The door's been opened." (3T. at 524).

{¶ 47} Even assuming that Smith could demonstrate that defense counsel performed deficiently, he must also prove that he was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 691–692, 104 S.Ct. 2052, 80 L.Ed.2d 674. *See, State v. Obermiller*, Oh. Sup.Ct. No.2011–0857, 2016–Ohio–1594, ¶ 93 (Apr. 20, 2016).

{¶ 48} To show prejudice, he must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694, 104 S.Ct. 2052. The prejudice inquiry, thus, focuses not only on outcome determination, but also on "whether the result of the proceeding was fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

{¶ 49} In determining whether Smith has indicated a reasonable probability sufficient to undermine confidence in the outcome of the trial we find it helpful to look to the standard to be applied in determining harmless error where a criminal defendant seeks a new trial because of the erroneous admission of evidence.

{¶ 50} In *State v. Morris*, 141 Ohio St.3d 399, 2014–Ohio–5052, 24 N.E.3d 1153, the Ohio Supreme Court considered the standard to be applied in determining harmless error where a criminal defendant seeks a new trial because of the erroneous admission of evidence under Evid.R. 404(B). The court summarized its analysis in the subsequent decision of *State v. Harris*, 2015–Ohio–166, ⸺ N.E.3d ⸺, ¶ 37:

> Recently, in *Morris*, a four-to-three decision, we examined the harmless-error rule in the context of a defendant's claim that the erroneous admission of certain evidence required a new trial. In that decision, the majority dispensed with the distinction between constitutional and non-constitutional errors under Crim.R. 52(A). *Id*. at ¶ 22–24. In its place, the following analysis was established to guide appellate courts in determining whether an error has affected

the substantial rights of a defendant, thereby requiring a new trial. First, it must be determined whether the defendant was prejudiced by the error, *i.e.,* whether the error had an impact on the verdict. *Id.* at ¶ 25 and 27. Second, it must be determined whether the error was not harmless beyond a reasonable doubt. *Id.* at ¶ 28. Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt.

*Id.* at ¶ 29, 33.

{¶ 51} There is no indication in light of the overwhelming evidence of Smith's guilt that the jury abandoned their oaths and their integrity and found Smith guilty of the crimes because of his prior conviction.

{¶ 52} In any case, the evidence overwhelmingly supports a finding of Smith's guilt. Smith cannot claim that but for these statements, he would be acquitted. After a thorough review of the record, we have no doubt that the remaining properly introduced evidence overwhelmingly establishes defendant's guilt. *See Delaware v. Van Arsdall* (1986), 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674; *State v. Williams* (1983), 6 Ohio St.3d 281, 452 N.E.2d 1323.

{¶ 53} In *Wilson v. Mazzuca*, cited by Smith trial counsel committed numerous instances of prejudicial ineffectiveness, including: (1) eliciting testimony from the complainant and eyewitness, that he feared Wilson would retaliate against him for testifying; (2) opening the door-by attacking the police investigation of the robbery-to the admission of the complainant's identification of Wilson's "mug shot" from a "mug book" on the day of the robbery; (3) not objecting to the prosecutor's characterization of Wilson's photograph as a "mug shot" and not requesting the redaction of Wilson's "mug shot," which showed him with a booking plate hung around his neck; (4) moving into evidence an unredacted police report describing Wilson's October 1994 arrest for an armed "shake-down" at a construction site; and (5) opening the door to the admission of Wilson's prior convictions for drug possession and physical harassment by eliciting testimony from Younger regarding Wilson's good character. 570 F.3d 490, 502 (2nd Cir. 2009).

{¶ 54} The trial judge in Wilson had repeatedly warned trial counsel concerning his tactics and approach to the case. The court on Wilson's petition for habeas corpus noted, "The record indicates that defense counsel misinterpreted and misunderstood the law, failed to pay attention, acted recklessly, and did not appreciate the consequences of his decisions, even though in many cases he was explicitly warned of the risks by the trial court." *Id.* at 506.

{¶ 55} Likewise in *Goodman v. Bertrand*, 467 F.3d 1022, 1029–30 (7th Cir. 2006), cited by Smith, the appellant argued that his trial counsel's performance fell below

an objective standard of reasonableness because his lawyer: (1) opened the door for admission of Goodman's two prior convictions for armed robbery, (2) failed to subpoena the store's cashier to testify, (3) failed to request a limiting instruction regarding the threats evidence, (4) failed to properly object and preserve the record regarding the denial of Goodman's right to confront the witnesses against him, and (5) failed to object and request a mistrial based upon prosecutorial misconduct in closing argument. 467 F.2d at 1030. On appeal from the denial of his petition for habeas corpus, the court noted,

> Counsel's failure to subpoena store cashier Retzlaff was only the first in a catalog of errors. Several other factors contributed to the overall ineffectiveness of Goodman's counsel. Direct examination of Goodman led to the revelation of two prior convictions for armed robbery on cross-examination. Counsel also failed to request an instruction limiting the use of testimony regarding threats made to witnesses, where jurors may have been left with the impression that the threats were orchestrated by Goodman, despite the lack of any evidence to that effect. Nor did counsel make any record of the fact that Ross hoped to receive a time reduction for his testimony, and counsel did not object when the prosecutor insinuated in closing argument that Ross had no motivation to testify. Finally, Goodman's counsel did not object or request a mistrial when the prosecutor augmented Sallis's credibility by falsely arguing in closing that Sallis could not have been convicted or charged for his role in the crime absent his own confession. While each of these errors considered in isolation may not have been prejudicial to Goodman, viewed in their totality, they create a clear pattern of ineffective assistance, the existence of which "l[ies] well outside the boundaries of permissible differences of opinion." *Hardaway*, 302 F.3d at 762.

*Goodman v. Bertrand*, 467 F.3d 1022, 1030 (7th Cir. 2006) (emphasis added).

{¶ 56} In the case at bar, it appears that trial counsel unintentionally asked his question in an overbroad manner. Counsel realizing his mistake quickly attempted to correct the error. There is no pattern in the record before this court that counsel committed multiple transgressions that affected Smith's substantive right to a fair trial.

{¶ 57} The decision not to request a limiting instruction can be seen as a tactical decision to not draw any more attention to the prior conviction. Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. *State v. Phillips*, 74 Ohio St.3d 72, 85, 1995–Ohio–171. Even if the wisdom of an approach is questionable, "debatable trial tactics" do not constitute ineffective assistance of counsel. *Id.* "Poor tactics of experienced counsel, however, even with disastrous result, may hardly be considered lack of due process * * *." *State v. Clayton*, 62 Ohio St.2d 45, 48, 402 N.E.2d 1189 (1980) (quoting *United*

*States v. Denno*, 313 F.2d 364 (2nd Cir.1963), *certiorari denied* 372 U.S. 978, 83 S.Ct. 1112, 10 L.Ed.2d 143.

{¶ 58} Having reviewed the record that Smith cites in support of his claim that he was denied effective assistance of counsel, we find Smith was not prejudiced by defense counsel's representation of him. The result of the trial was not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel. Smith has failed to demonstrate that there exists a reasonable probability that the result of his case would have been different.

{¶ 59} Smith's first assignment of error is overruled.

*State v. Smith*, 2016 WL 6138914, at *4-9.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that counsel's performance was deficient, or that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment, and that this deficient performance prejudiced the petitioner. *Id*. at 687. This showing requires that defense counsel's errors were so serious as to deprive the defendant of a fair and reliable trial. *Id.*

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371 (2010). Given the difficulties inherent in determining whether an attorney's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." *Strickland*, 466 U.S. at 689. Nevertheless, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. In order to establish prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceedings

would have been different.  *Id*. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.  Because a petitioner must satisfy both prongs of *Strickland* in order to demonstrate the ineffective assistance of counsel, should a court determine that the petitioner has failed to satisfy one prong, it need not consider the other.  *Id*. at 697.

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)."  *Harrington*, 562 U.S. at 105.  The Court observed that, while "'[s]urmounting *Strickland's* high bar is never . . . easy,' . . . , [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is even more difficult."  *Id*. (quoting *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010), and citing *Strickland,* 466 U.S. at 689).  The Supreme Court instructed that the standards created under *Strickland* and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Id.* (citations omitted).  Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Id*.

Here, the appellate court concluded that Petitioner could not establish prejudice, as that term is defined under *Strickland,* in view of the overwhelming evidence of guilt.  Petitioner removed a package that was addressed to his name at his place of business which contained over two pounds of cocaine and placed it into his vehicle.  He turned off surveillance equipment shortly before the package was scheduled to arrive and turned the surveillance equipment back on shortly after the package arrived.  Police found large sums of cash and other items commonly connected with the distribution of cocaine in Petitioner's home, including a vacuum sealing

machine, several bags of white powder, a large amount of Inositol, typically used as a cutting

agent in the sale of cocaine, and a chrome press and digital scale containing cocaine residue.

Applying the deferential standard of review, and in view of the substantial evidence of guilt, that

conclusion is not unreasonable so as to warrant federal habeas corpus relief.

**Claim Four – Sufficiency of the Evidence**

In claim four, Petitioner asserts that the evidence is constitutionally insufficient to sustain

his convictions. The state appellate court rejected this claim:

> Smith contends that his conviction is against the sufficiency of the evidence. Specifically, Smith argues there is no evidence that he knew the package contained over two pounds of cocaine.

> {¶ 91} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v.. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*; *see also McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

> \*\*\*

> {¶ 94} Smith was convicted of possession. R.C. 2925.11 provides in relevant part,

> (A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.

> \* \* \*

> {¶ 95} A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact. R.C. 2901.22(B).

{¶ 96} Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." (Footnotes omitted). *State v. Huff*, 145 Ohio App.3d 555, 563, 763 N.E.2d 695(1st Dist. 2001). Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." *State v. McDaniel*, 2nd Dist. Montgomery No. 16221, 1998 WL 214606 (May 1, 1998) (citing *State v. Elliott*, 104 Ohio App.3d 812, 663 N.E.2d 412(10th Dist. 1995)).

{¶ 97} R.C. 2925.01(K) defines possession as follows: "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2901.21 provides the requirements for criminal liability and provides that possession is a "voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for sufficient time to have ended possession." R.C. 2901.21(D)(1).

{¶ 98} Possession may be actual or constructive. *State v. Butler*, 42 Ohio St.3d 174, 176, 538 N.E.2d 98 (1989); *State v. Haynes*, 25 Ohio St.2d 264, 267 N.E.2d 787 (1971); *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus. To establish constructive possession, the evidence must prove that the defendant was able to exercise dominion and control over the contraband. *State v. Wolery*, 46 Ohio St.2d 316, 332, 348 N.E.2d 351 (1976). Dominion and control may be proven by circumstantial evidence alone. *State v. Trembly*, 137 Ohio App.3d 134, 738 N.E.2d 93 (8th Dist. 2000). Circumstantial evidence that the defendant was located in very close proximity to the contraband may show constructive possession. *State v. Butler, supra*; *State v. Barr*, 86 Ohio App.3d 227, 235, 620 N.E.2d 242, 247–248(8th Dist.1993); *State v. Morales*, 5th Dist. Licking No.2004 CA 68, 2005–Ohio–4714, ¶ 50; *State v. Moses,* 5th Dist. Stark No.2003CA00384, 2004–Ohio–4943,¶ 9. Ownership of the contraband need not be established in order to find constructive possession. *State v. Smith*, 9th Dist. Summit No. 20885, 2002–Ohio–3034, ¶ 13, citing *State v. Mann*, (1993) 93 Ohio App.3d 301, 308, 638 N.E.2d 585(8th Dist.1993). Furthermore, possession may be individual or joint. *Wolery*, 46 Ohio St.2d at 332, 348 N.E.2d 351. Multiple individuals may constructively possess a particular item of contraband simultaneously. *State v. Pitts*, 4th Dist. Scioto No. 99 CA 2675, 2000–Ohio–1986. The Supreme Court has held that knowledge of illegal goods on one's property is sufficient to show constructive possession. *State v. Hankerson*, 70 Ohio St.2d 87, 91, 434 N.E.2d 1362, 1365 (1982), certiorari denied, 459 U.S. 870, 103 S.Ct. 155, 74 L.Ed.2d 130 (1982).

{¶ 99} In the case at bar the state presented evidence that prior to the delivery of the cocaine to Smith's place of business, Smith disabled the video surveillance system. When the system is reactivated, Smith is seen removing the package containing the cocaine. The package had been moved from the place where the employee who had accepted it had placed it. Smith then places the package in his vehicle. Smith does not immediately stop when Officers attempt a traffic stop.

Smith gave Sergeant Alan Thomas of the Licking County Sherriff's Office an address of "252 West Main Street, Newark, Ohio" as his place of residence. (2T. at 365–366).

{¶ 100} Smith was also charged with Trafficking. R.C. 2925 .03, provides in relevant part,

(A) No person shall knowingly do any of the following:

* * *

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

{¶ 101} Lieutenant Paul Cortright, a law enforcement officer with over twenty-nine years of experience. Twenty-five of his twenty-nine years have been with the Central Ohio Drug Enforcement Task Force. Lieutenant Cortright testified he had received specialized training in dealing with items related to drug trafficking. Lieutenant Cortright testified that he had been involved in the search of the Smith's residence, specifically in the master bedroom. Lieutenant Cortright located a safe and, inside a cardboard box found in a black vinyl bag. Inside of the bag, Lieutenant Cortright found a $50,000.00 in U.S. currency inside a vacuum-sealed bag. The vacuum sealing machine was also located in the master bedroom. Lieutenant Cortright testified that it is very common to seal up packets of narcotics for redistribution.

{¶ 102} Lieutenant Cortright further testified that several bags of white powder were located in the kitchen of Smith's home, and his belief was that it was used for cutting cocaine. In addition, a large amount of Inositol a dietary supplement was located underneath the kitchen sink. Lieutenant Cortright testified that a bottle of Inositol costs $149 and is used as a cutting agent for cocaine. Lieutenant Cortright explained that the block of cocaine in the package would be made into a powdered form using something like a mortar and pestle. A mortar and a pestle were recovered from underneath the sink area in Smith's kitchen. The cocaine would then be mixed with a cutting agent, such as Inositol, and then pressed back into a solid form. A chrome press and a digital scale were also recovered from Smith's home. Additionally, the press found in Smith's home was found to have cocaine residue on it. The mortar and pestle found in Smith's home also had residue on it, but not a sufficient amount to test.

{¶ 103} If the state relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *State v. Jenks*, 61

Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, superseded by State constitutional amendment on other grounds as stated in *State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668 (1997). "Circumstantial evidence and direct evidence inherently possess the same probative value [.]" *Jenks,* 61 Ohio St.3d at paragraph one of the syllabus. Furthermore, "[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Jenks,* 61 Ohio St.3d at 272, 574 N.E.2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott,* 51 Ohio St.3d 160, 168, 555 N.E.2d 293 (1990), citing *Hurt v. Charles J. Rogers Transp.* Co, 164 Ohio St. 329, 331, 130 N.E.2d 820 (1955). Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. *Lott,* 51 Ohio St.3d at 168, 555 N.E.2d 293, citing *Hurt,* 164 Ohio St. at 331, 130 N.E.2d 820.

{¶ 104} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Smith committed the crimes of possession of cocaine and trafficking in cocaine. We hold, therefore, that the state met its burden of production regarding each element of the crime of trafficking in cocaine and, accordingly, there was sufficient evidence to support Smith's conviction for possession of cocaine and trafficking in cocaine.

\*\*\*

{¶ 108} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) citing State v. Nivens, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, citing *State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, citing *State v. Caldwell,* 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks,* 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, superseded by State constitutional amendment on other grounds as stated in *State v. Smith,* 80 Ohio St.3d 89, 102 at n. 4, 684 N.E.2d 668 (1997).

{¶ 109} In the case at bar, the jury heard the witnesses, viewed the evidence and heard Smith's arguments concerning his lack of knowledge of what was contained inside the package.

\*\*\*

{¶ 112} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes of possession of cocaine and trafficking in cocaine beyond a reasonable doubt.

*State v. Smith,* 2016 WL 6138914, at \*15-20.

Before a criminal defendant can be convicted consistent with the United States Constitution, there must be evidence sufficient to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In determining whether the evidence was sufficient to support a petitioner's conviction, a federal habeas court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id*. (quoting *Jackson*, 443 U.S. at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume—even if it does not appear on the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* (quoting *Jackson*, at 326).

Moreover, federal habeas courts must afford a "double layer" of deference to state court determinations of the sufficiency of the evidence. As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), deference must be given, first, to the jury's finding of guilt because the standard, announced in *Jackson v. Virginia*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Second, and even if a *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a

federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial hurdle for a habeas petitioner to overcome, and based on the facts set forth by the Ohio Court of Appeals, Petitioner cannot do so here.

"[C]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006). When viewing all of the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia*, this Court likewise concludes that the evidence was constitutionally sufficient to sustain petitioner's conviction. Further, this Court may grant relief on petitioner's claim only if the state appellate court was "'objectively unreasonable' in concluding that a rational trier of fact could have found [petitioner] guilty beyond a reasonable doubt." *Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir. 2008). For the reasons discussed by the state appellate court, the Court is not persuaded that Petitioner has met this standard here.

Claim four is without merit.

## Recommended Disposition

For the foregoing reasons, it is **RECOMMENDED** that this action be **DISMISSED**.

## Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in

part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

 _s/ *Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
Chief United States Magistrate Judge
